I'm Larry Woodward. I represent J.L. Watts Co., the defendant in an eminent domain action brought by the City of Rock Island in the Rock Island County Circuit Court. We're here appealing a May 4, 2009, order of that court which denied the company's motion to reconsider, traverse, and motion to dismiss the City of Rock Island's petition and an order setting preliminary just compensation and the May 21, 2009, order vesting title in the City of Rock Island. The City's petition was filed in July of 2008. We filed a timely traverse and motion to dismiss. The original petition made no mention of quick take powers. In your motion to traverse and dismiss, you didn't raise the issue of whether there was a failure to negotiate in good faith. Isn't that right? No. We argued that there was a failure to negotiate in good faith because they failed to offer relocation benefits. I mean, that was the central issue that we were arguing, that they failed to negotiate in good faith because of that. Okay. And that's your, okay. The motion was heard on January 28, 2009. The court denied the motion. At that time, still, there was no quick take action motion pending in front of the court that the City of Rock Island had not filed such a motion. They did not do so until April 6, 2009. And on April 28, 2009, the court heard our motion to reconsider, its denial of the traverse and motion to dismiss, and also the City's motion to set preliminary compensation. It entered its order on May 4. We asked the court to extend the time for filing our notice of appeal. It was granted. Was there an objection to that, to your request for more time? No. Because I know Judge First signed that order, and Judge Blackwood had been handling the case. Nobody objected to the extension of time? No. And that was filed before the 30 days? Yes. In fact, if you look at the section, at Rule 307, the question of when the time starts for filing that is one of their main arguments, that we missed it. They're claiming we should have filed it back within 30 days after the February 4 order. Our position is that that doesn't apply because at that time there were no quick take proceedings pending. So you have the May 4 order, but you don't have an order vesting title in the City of Rock Island until June, the early part of June of 2009. And it's our position that the decision on the traverse and motion to dismiss is not subject to appeal until the court enters its order fixing preliminary just compensation and vesting title. And the reason for that is that the city has the authority to abandon its eminent domain proceedings at any time until they deposit the money in the court with the clerk of the court. Once they do that and they get title to the property is when the case law prior to the adoption of the Eminent Domain Act in 2007 said that you could then file an interlocutory appeal. You had to have that order before you could file your interlocutory appeal. You said that order came in early June. Is it possible it was May 21? Possibly. I'm sorry. It's the order of possession that was in early June. The order vesting title looks like it was May 21. Yes. The company's position is that the city failed to negotiate in good faith prior to filing its petition. It's required to do so as a condition of filing a petition in eminent domain by 735 ILCS 30-10-5-10A. We say there are two reasons why it failed to negotiate in good faith. One is that they denied any responsibility of paying to J.L. Watts Company relocation benefits. They didn't provide in their notice any procedure for us to obtain those relocation benefits. They didn't offer the relocation planning, the assistance in finding comparable properties, the assistance in obtaining other governmental benefits afforded to displaced persons that are required by the Uniform Relocation Act. Which is, we believe, incorporated by reference by 735 ILCS, I think it's 30-5-62, which is where it says that in any eminent domain proceeding, the condemning authority must reimburse displaced persons their reasonable relocation expenses. We're saying that part of those expenses are trying to find comparable properties, trying to plan for the relocation, trying to get additional benefits provided by other government agencies. They didn't offer any of that. They denied any obligation to do that. In fact, they denied any obligation to pay us to relocate a substantial amount of personal property that we had on this property that they proposed to condemn. We had estimated that would cost us over $125,000. That's in the record. Well, the city's relying on the statute, right? 10-5-50, I mean, of the act. Well, no, they were relying on an opinion from the city attorney that we didn't constitute as a displaced person. I mean, there's an affidavit in the record from Mr. Konecki, the Rock Island City Attorney, that says they weren't displaced persons, so we didn't have any obligation to provide them relocation benefits. The second problem of our argument that they didn't negotiate in good faith is that their written offer is for $465,000. But they proposed that $301,000 of that $465,000 be escrowed to assure payment for mitigation and remediation expenses of some speculative, unassertive, and unadjudicated environmental violations. The record would reflect that there's a possibility that the city of Rock Island is the party that's responsible for this speculative environmental violation. Their own witness at the April 28th hearing talks about the environmental violation as some kind of groundwater flume that they find. It's 20 feet from the property line, and the city of Rock Island's wastewater treatment plant is immediately upgradient of that flume. Now, he subsequently corrects what he claims is the upgradient. His original testimony is that it flows northeast, which would make the wastewater treatment plant clearly responsible for it. He then subsequently changes it and says, no, it's northwest. But you have that testimony in the record that he said that. Well, it's not a question of finally determining whether it did or didn't. His question is, is it totally unreasonable to escrow money in light of the fact that there's a reasonable potential that there's going to be an environmental cleanup problem? This court in the Department of Transportation, XREL People versus PAR, P-A-R-R, in 1994 said that to do so, you can't introduce evidence of that when you can't prove the existence of the environmental violation. And in this case, it's all speculative. There's no indication that it's ever been asserted by the EPA against the city and against J.L. Watts Company. There's no indication that it was ever adjudicated as a violation. And then it goes on to say that this court says that to do so would violate the procedural due process rights of a condemnee because it would prevent it from obtaining. But that PAR case was decided prior to the statute that I referred to before it was passed, right? The 10-5-50. Isn't that right? Yes. And the legislature tries to amend it, but it doesn't do anything about the procedural due process problem. All it does is says you can introduce the evidence. Well, and let's suppose that case was decided, right? But the fact is, if the city goes out and has to pay, let's say, half a million dollars for a piece of property in eminent domain, and because that's what they said that's what the value is worth, and then you find out, oh, guess what? There's another half a million dollars in environmental cleanup. So now the government has paid a million dollars for a piece of ground that it could have used to live with a half a million dollars after the cleanup. It still has the same rights as any other property owner to go against prior property owners or adjoining property owners to collect their money. What it's trying to do is get us to fund that when there's no evidence that we were ever responsible for that environmental violation. It's never been charged. It wasn't found until their environmental engineer was allowed to go on our property and conduct groundwater monitoring probes. Well, is escrowing the money the same thing as asking you to fund it? Sure is. How are we going to fund additional property, purchase of additional property, when they're saying it's worth $465,000 and they're only going to give us $164,000, and they're not going to give us any relocation benefits that we estimate to be over $125,000? That means we don't have any money. All the burden, the onus of fronting the relocation and the finding of new property falls upon us. That's exactly why the 2007 law went into effect to take away that onus on condemnation. We ask that the decision of the court be overturned, that the court order the trial court to revest us with title and to set a hearing on what compensation should be paid to us for the use and occupation of our property. Counsel, you may proceed. Thank you, Your Honor. I please the court, Your Honors. There are multiple issues in this case, and several of them have really never been decided, so in some respects we've got a lot of first impression issues here. But I don't think they're much difficult. First, I'd like to clear up this whole issue of what's being appealed. The original motion to dismiss and traverse that was filed by Mr. Woodward raised several issues, but there was only one of them dealing with good faith negotiations, and that had to do with this relocation cost, which I will discuss shortly. There was a hearing on that motion to dismiss. There were other issues in it, too, but none of those have been appealed. The court, in a written opinion, on February 4, 2008, I'm sorry, 2009, denied the motion to dismiss, and that was the date. There was thereafter a motion for reconsideration filed. Under the appellate procedures, interlocutory appellate procedures, Supreme Court Rule 307, I'm sorry, whatever the number is, and it ends in A7, which is the Supreme Court rule that confers the right of interlocutory appeal. All of those under that interlocutory appeal section state that a motion for reconsideration does not toll the time for filing a notice of appeal. Okay, but let me ask you, since there was no quick take pending at the time of that first order, was that order appealable? Yes. And it was. And I realized the court, the fact, the way I set up my brief, I went to the merits, because the court had previously addressed this in a motion to dismiss, and, of course, the motion came back, motion denied. Of course, I was not sure what the reasoning was, but quite frankly, when we rebriefed it in our brief, I frankly confessed that I didn't think that I had dealt with the issue that you just brought up with the motion for the quick take not pending. And I think that's critical. But there's nothing in the Supreme Court rule, and there's nothing in the statute that says that a quick take motion has to be pending. On the contrary, the rule says, the Supreme Court rule simply says that interlocutory appeals, by the way, it's 307A7, you may have an interlocutory appeal determining issues raised in proceedings to exercise the right of domain under section 25-10. Okay, those issues. And there are three issues which are specified in 20-510 that says you can appeal them. And then it says, the court's order on those matters is appealable, I'm quoting from the statute now, and an appeal may be taken from that order, and that's the order of February 4th, by either party within 30 days after the entry of the order, but not thereafter, unless the court on good cause shown extends the time for taking the appeal. April 6th, right? What's that? The quick take was filed April 6th. Right, but it doesn't say it here. The issues it's talking about appealing are those three issues. But if you read that as strictly as, you know, I realize what it says and that's a good point, but if you read that very strictly as I think you're wanting us to do, then in effect, if it says it can appeal within 30 days or not thereafter, then in effect we're not talking about an interlocutory order, but in fact a final order that is never appealable after that date. Does that make sense? That's the law. It's never appealable after that date, and the Supreme Court has said that the reason, that's in People v. Marker, which we cite in our brief, the Supreme Court has said that the reason that you want to have these resolved quickly is so that the parties will know if they can proceed. Doesn't that mean more in a quick take than it does, if there's no quick take pending, then do you have the urgency that has to be resolved if there's no quick take pending? Because they do refer back to the timelines under the quick take statute. There's nothing in these appellate rules, there's nothing in the statute that says anything about, they discuss the procedure on quick take, but what the statute says is that if you're going to have a quick take and you haven't previously decided the matter, then you decide these issues that would be in the motion to dismiss, but it says, but in this case it had been done previously. And the rule says those are the issues which are appealable, and there are some older cases which Mr. Woodward has relied on, and I presume this court relied on when it denied my motion to dismiss. They were all before the 1970 Constitution, which gave the right of an interlocutory appeal to be made by rule of the Supreme Court. The old statutes, which I've tracked too, I've tracked the language of the old statutes and how they differ from the present statute, because it never previously said, actually it never said until 2007, that the court's order on those matters, referring to the three things, one of which is this right to negotiate in good faith, is appealable. The motion for re-hearing was pending when the quick take was filed. Absolutely. And this is sort of a unique case, because this is very different than the other cases in dealing with this, because they all come from quick take. There's rulings and then there's a quick take. But by the way, the motion I think for quick take was filed on April 6th, and there was still no appeal. Even the order extending time was 30 days after April 6th. It was April 28th when they annulled the motion to reconsider, right? Well, right, right, right. But it's not true, as Mr. Woodward said, that the order on these appealable issues was entered on May 4th or whenever he did preliminary just comments. Well, there was a motion to extend the time period to do the appeal. Yeah, but that was well after the 30 days. That was even more than 30 days after April 6th when the motion for quick take was filed. But the city had no objection, and how does that play into your... I don't think it plays in at all, because once you lose jurisdiction, you lose jurisdiction. Well, they didn't lose jurisdiction on the case, right? You don't lose jurisdiction because you don't take an interlocutory appeal. You lose jurisdiction of taking an appeal on the interlocutory issues, and that's when we move to dismiss them. No, when there's a final hearing, when there's a jury trial, anybody can appeal. But the interesting thing is quick take orders themselves are not appealable. So it doesn't even make any sense to tie the issue of these appealable issues, the right to negotiate in good faith, to the quick take order. Actually, if I could, I'd like to move on to the merits while we can. I'll ask for the merits on the relocation costs. They talk about reimbursement. The law talks about reimbursement of relocation costs, but have there been any costs incurred? Absolutely. Here's what happened on that. There was a new statute that went into effect in January of 2007 on relocation costs. And what it does, this had never been in the law in Illinois previously, so this is a brand new case. And it says the condemning 3010-5-62, the condemning authority shall pay the displaced person's reimbursement for their reasonable relocation costs, determined in the same manner as under the Federal Uniform Relocation Assistance and Real Property Acquisitions Act. So it refers to, in effect, incorporates a federal statute. I don't think it incorporates everything that's in that federal statute, like he was talking about relocation planning and all kinds of other things. It just says reimbursement for displaced persons. Now, it's true, Mr. Konecki read displaced persons, and he didn't think personal property was a displaced person. He didn't indulge, and when I first read it, I did not indulge the counterintuitive assumption that displaced persons could be displaced property. But when I finally did some research and looked at all the federal statutes and the regulations, yeah, yes, it did refer to displaced property. Now, and as soon as we found that out, the city offered to pay these relocation costs. Now, the critical issue here is, which Mr. Woodward is arguing, is that this was a part of the duty to negotiate in good faith this matter of offering relocation costs. Well, the federal courts have never held that was a prerequisite. Absolutely not. In fact, what the federal courts have said, and we've got the cases there, you remove the property, you see what your reimbursement costs are, you submit documentation, and you seek reimbursement. Now, the Secretary of Transportation issued a regulation which said that if you've got a hardship, well, you can apply for it in advance, provided you have a safety that you're really going to do the relocation. Okay? Mr. Watts asked for that. So the city said, fine, tell us what it's going to be. And the city up front paid $70,000. That's documented in an agreement that was signed. The city manager approved it. That's in the record. And that was paid. We don't have it in the record. There was more money paid later. The relocation costs that have often paid. But the critical point now is, is that was this duty to offer relocation costs part of the duty to engage in good faith to arrive at value? Well, value continues to be defined in the Illinois statute as what a willing buyer is willing to buy and to pay, the classic definition. And it doesn't say anything about relocation costs. And interestingly, the federal statute says the same thing. So we think it's just an incredible stretch to be suggesting that John Konecki, the city attorney, somehow was in bad faith because initially he didn't think that displaced persons included displaced property, and that he didn't make it part of these negotiations. With regard to the environmental costs that's been referred to, and that's the other aspect of this. What about PAR and how that relates to the statute? Before I talk about PAR, though, if I could, that issue was never raised. The lack of good faith negotiations for trying to deduct it as part of the negotiations was never raised in the trial court. It was not raised in the motion to dismiss. It was not raised in the motion for reconsideration. At the time the motion for reconsideration was argued, Mr. Woodward didn't say one word about that was a reason for a lack of good faith negotiation. This is all in the brief. We've spelled that out. After the quick take hearing and Mr. Woodward asked for an opportunity to have an opportunity to further discuss the issues at the quick take hearing, he inserted as an afterthought a one sentence in his legal memorandum that for the first time raised this issue that the environmental costs by deducting them, that was a lack of good faith. He never asked the judge for a ruling on that. It's clearly weighed under the applicable cases, and we've spelled that out. But the argument isn't any good anyway. Let's assume it wasn't weighed. And for the precise reasons that Justice Schmidt has suggested, this had to do with value. And as Justice Carter has said, when after par, the Illinois legislature passed a new statute, and that statute specifically made this kind of evidence admissible, and it was gone into at the quick take hearing. There was no reason for the city attorney to think that because he's following a statute, and including environmental costs, that that's a lack of good faith. And the legal commentators in the icicle book think that par is no longer the law. Now, as it happens, Justice Blackwood did have concerns about this due process situation, which Mr. Woodward has mentioned, and he didn't let us deduct it. So we deposited the whole $465,000 because that was his order. That's what was proved. But to suggest that because someone picks up a statute, a city attorney, and thinks that he's entitled to follow that, which says this kind of evidence is admissible, and our appraiser said that this affects value, that no lender, just as Justice Schmidt suggested, no lender is going to lend money on the basis of a piece of property where you have to pay a cost to cure and simply ignore that. And I suggest that par in light of this statute is probably overruled, and I would respectfully disagree even that the due process is implicated because the whole due process scenario under the Illinois environmental laws come from the Illinois legislature. Well, the Illinois legislature... I guess your time is up. Okay, but the Illinois legislature passed this statute which superseded what the legislature had to say about due process on environmental things. So we think there was good faith. Thank you, Counsel. Counsel? Good luck, and watch. Thanks, I appreciate it. I'd get it back to you. For some reason, Mr. Lefstein and I have been at complete opposite polls on this issue. He continues to say there's nothing in the statute that says that a quick take has to be pending. Now, let me read to you that Section 20-5-5 says this section applies only to proceedings under this article that are authorized in this article and in Article 25 of this Act. It then says that a person can file a motion for setting just compensation. Section 20-5-10, the court shall fix a date not less than five days after the filing of a motion under 20-5-5 for the hearing on that motion and shall require due notice. B is the section that he's quoting that says the court's order on those matters is appealable and an appeal may be taken from that order by either party within 30 days after entry of the order. Now, for some reason, the legislature didn't use that order twice. It said that order and then the order. Now, the order is the order on the motion for setting just compensation. It's right in the statute. It has to be pending before this section that cuts off the right to an interlocutory appeal is applicable. With regard to the environmental costs, you're relying heavily on PAR. Yes, I am, because a procedural due process argument is not fixed by the amendment to the statute. This court said that to allow that takes away the right of the condemned to seek reimbursement from third parties for this environmental violation. It takes away the expert nature of the… You're just throwing that money to defeat your client's right to go against a third party. We don't have the right to bring third parties into the condemnation action to… You're going to bring another action for them. But that's – then we have to wait even longer to find out if we get our money from the just compensation when it's speculative, it's unasserted, and it's unadjudicated, which is exactly why this court said in PAR that it's wrong. If it's speculative, you don't even have to rely on PAR. A court has a right to deny the introduction of speculative testimony because it's not probative on any issue. Well, environmental cases, the current owner is a defendant in many of those cases. Isn't that right? And the current owner is subject to the environmental concerns, correct? Correct. And that's happening all over the state, correct? But not in eminent domain actions. So an eminent domain is an exception to the general rule where a current owner might be subjected to environmental costs or concerns? Yes, because the idea is that you're taking our property without our consent. You are imposing upon us some speculative violation that's only been determined by an engineer hired by the condemning authority. There's never been a charge by the EPA that there's a violation. There's never been a determination. There's never been an assertion except through this engineer. Well, is 10-5-50 unconstitutional? I believe so, under procedural due process grounds. That's exactly what this court said in PAR in 1994. Well, they didn't say that because the statute wasn't around then. Right. But, I mean, they prohibited the introduction of testimony because it violated procedural due process. Counsel, you have one minute. On the waiver issue, earlier today people said, well, the waiver doesn't bind this court. I've made that argument. But the issue is I cited a case in my reply brief that a letter shortly before trial preserved the issue. I presented to the court something that had already been briefed fully about the denial of the introduction of the evidence. And, in essence, what happened here is that I relied on the statute to think that, oh, they were going to have the right to escrow this or require the escrow of this money. I relied on a case that said, in a bribery case, that you could escrow some money in trust. But then, when I saw PAR to prevent the introduction of the testimony, an epiphany hit me. This is a violation of our right of good faith negotiations, too. I presented it to the court in my brief that the court asked for. Counsel, your time is up. I don't believe the waiver issue. Thank you, Counsel. The court will take this case under advisement and move on the case with dispatch. The court stands adjourned today until tomorrow.